IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUE GEE CHENG,<br><br>            Plaintiff,<br><br>v.<br><br><br>AKERS BIOSCIENCES, INC.,<br>JEFFREY L. BERENSON, JAMES E.<br>CRADDOCK, BARBARA J.<br>DUGANIER, THOMAS J. EDELMAN,<br>HOLLI C. LADHANI, DAVID L.<br>STOVER, SCOTT D. URBAN,<br>WILLIAM T. VAN KLEEF, and<br>MARTHA B. WYRSCH,<br><br>            Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Sue Gee Cheng ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Akers Biosciences, Inc. ("Akers" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Akers and the Defendants.

**SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against Akers and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to MyMD Pharmaceuticals, Inc. ("MYMD") and XYZ Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2. On November 11, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with MYMD. Pursuant to the terms of the Merger Agreement, on a pro forma basis and based upon the number of shares of Akers common stock to be issued in the merger, current Akers' shareholders will own approximately 20% of the combined company, on a fully diluted basis, and current MYMD shareholders will own approximately 80% of the combined company on a fully diluted basis. The Merger Agreement also provides for additional contingent payments in cash and shares to the stockholders of MyMD under certain circumstances.

3. On January 15, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Akers and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Akers

shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of Akers shares.

9. Defendant Akers is incorporated under the laws of New Jersey and has its principal executive offices located at 1185 Avenue of the Americas, 3rd Floor, New York, New York 10036. The Company's common stock trades on the NASDAQ under the symbol "AKER."

10. Defendant Christopher C. Schreiber ("Schreiber") is and has been the Chairman of the Board of Akers at all times during the relevant time period.

11. Defendant Joshua Silverman ("Silverman") is and has been a director of Akers at all times during the relevant time period.

12. Defendant Bill J. White ("White") is and has been a director of Akers at all times during the relevant time period.

13. Defendant Robert Schroeder ("Schroeder") is and has been a director of Akers at all times during the relevant time period.

14. Defendants Schreiber, Silverman, White, and Schroeder are collectively referred to herein as the "Individual Defendants."

15. The Individual Defendants, along with Defendant Akers, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

16. Akers was incorporated in 1989 in the State of New Jersey under the name "A.R.C. Enterprises, Inc," which was changed to "Akers Research Corporation" on September 28, 1990 and "Akers Laboratories, Inc." on February 24, 1996. Pursuant to the Amended and Restated Certificate of Incorporation filed on March 26, 2002, the corporation's name was changed to "Akers Biosciences, Inc."

17. Akers was historically a developer of rapid health information technologies. On March 23, 2020, Akers entered into the MIPA with the Cystron Sellers, pursuant to which Akers acquired 100% of the Cystron Membership Interests. Cystron is a party to a license agreement with Premas whereby Premas granted Cystron, amongst other things, an exclusive license with respect to Premas' vaccine platform for the development of a vaccine against COVID-19, and other coronavirus infections. Since its entry into the MIPA, Akers has been primarily focused on

the rapid development and manufacturing of the COVID-19 Vaccine Candidate, in collaboration with Premas.

## The Company Announces the Proposed Transaction

18.     On November 12, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> BALTIMORE & THOROFARE, N.J.--(BUSINESS WIRE)--MyMD Pharmaceuticals, Inc. ("MyMD") and Akers Biosciences, Inc. ("Akers") (NASDAQ: AKER) today jointly announced that they have entered into a definitive merger agreement. Upon closing the transaction, the combined company is expected to be renamed MyMD Pharmaceuticals, Inc. and remain listed on the Nasdaq under the new ticker symbol "MYMD."
>
> The companies plan to hold a video conference for investors on Wednesday, November 18, 2020 at 4:15 p.m. ET to provide additional context on the integrated company, the clinical pipeline and drug development plan, and the commercial potential of the targeted indications.
>
> Following the merger, the two companies will join as one to focus on developing and commercializing MyMD's novel immunotherapy pipeline assets, including MYMD-1, a first-in-class drug being developed to treat autoimmune and age-related diseases, including extending the human lifespan. MYMD-1 has been shown to be effective in regulating the immune system from causing age-related diseases in preclinical studies and MyMD believes that it is the first oral small molecule regulator of tumor necrosis factor alpha (TNF-α) capable of crossing the blood-brain barrier. Looking forward, MyMD intends to also continue to develop its second asset, SUPERA-1R, a drug platform based on a patent-protected, synthetic derivative of cannabidiol (CBD) that seeks to target key cannabinoid receptors.
>
> A Phase 1 study on MYMD-1 has been completed, with plans to begin two Phase 2 clinical trials in Q1 2021 and additional Phase 2 clinical trials throughout 2021. Preclinical data, showing the effectiveness of MyMD-1 in treating autoimmune diseases, were compiled by nationally recognized researchers and laid the foundation for the studies, securing peer-reviewed publications in The Journal of Immunology and the Journal of Neuroimmunology.
>
> "Over the last seven years, MyMD has advanced its robust drug development program, achieving very encouraging preclinical and Phase 1 clinical data," said Chris Chapman, M.D., Chief Medical Officer of MyMD. "As we enter Phase 2 clinical trials and continue to advance our drug candidates toward commercialization--we believe this merger is the natural next step for us. Gaining

access to the public capital markets, along with Akers' capital resources, should allow us to accelerate our plans and elevate MyMD within the emerging fields of aging, immunometabolic regulation and TNFα inhibition."

The mechanism of action for MYMD-1 involves shutting down the production of TNF-α, offering the potential to reshape clinical guidelines and treatment approaches for aging and a number of autoimmune diseases including diabetes, rheumatoid arthritis and multiple sclerosis.

Reflecting on the rationale for the merger, Chris Schreiber, Executive Chairman and President of Akers, stated, "We are excited about this strategic opportunity to focus on MyMD's promising clinical development program and worldwide patent position. Through this transaction, the company will be committed to delivering novel, multi-indication platform drugs designed to extend healthy lifespan and treat the source of chronic autoimmune diseases. We are highly excited about MyMD's broad development program focused on two drug platforms that address enormous market potential. We believe that our merger with MyMD should provide us with additional value creation opportunities, in addition to our COVID-19 vaccine candidate that we have been working with our partners in India to develop."

**Management and Organization**

The combined company will be led by Chris Chapman, M.D., who will become President and Chief Medical Officer of MyMD, and Adam Kaplin, M.D., who will become Chief Scientific Officer of MyMD, and is planned to be headquartered in Baltimore, Maryland. Dr. Chapman is the founder and CEO of Chapman Pharmaceutical Consulting Inc. and will bring extensive experience working with biotechnology companies in the design of clinical trial protocols, conducting clinical trials and advising on regulatory and medical affairs. Dr. Kaplin, the prior founder and chief of the Neuropsychiatric CNS Autoimmune Consultation Clinic, at the Johns Hopkins Multiple Sclerosis Center of Excellence, and an assistant professor of psychiatry and behavioral sciences at the Johns Hopkins University School of Medicine, has consulted with multiple hospitals, biotechnology companies and non-profit organizations on medical and development matters.

**Transaction Details**

On a pro forma basis and based upon the number of shares of Akers common stock to be issued in the merger, current Akers' shareholders will own approximately 20% of the combined company, on a fully diluted basis, and current MyMD's shareholders will own approximately 80% of the combined company on a fully diluted basis (excluding the effect of warrants issued in the below described private placement). The merger agreement also provides for additional contingent payments in cash and shares to the stockholders of MyMD

under certain circumstances. The merger is expected to close in the first half of 2021, subject to the approval of Akers' shareholders at a special shareholder meeting, as well as other customary closing conditions.

In connection with the definitive merger agreement, Akers agreed to loan MyMD up to $3 million pursuant to a secured promissory note. The note bears interest at 5% per annum, has a maturity date of April 15, 2022 and is secured by a first lien on MyMD's assets.

**Private Placement**

Concurrently with the execution of the merger agreement with MyMD, Akers entered into a securities purchase agreement with certain accredited investors to raise $18 million through the issuance of up to 9,765,933 shares of common stock (or common stock equivalents) and accompanying warrants to purchase an aggregate of up to 9,765,933 shares of common stock at $1.85 per share of common stock and accompanying warrant. The warrants are immediately exercisable at an exercise price of $2.06 per share, with an expiration date of five and one-half years after the date of issuance. The offer and sale of the foregoing securities are being made in a transaction not involving a public offering and have not been registered under the Securities Act of 1933, as amended (the "Securities Act"), or applicable state securities laws.

Accordingly, the securities may not be reoffered or resold in the United States except pursuant to an effective registration statement or an applicable exemption from the registration requirements of the Securities Act and such applicable state securities laws.

Under an agreement with the investors, the Company is required to file a registration statement with the Securities and Exchange Commission covering the resale of the shares of common stock to be issued to the investors and to use best efforts to have the registration statement declared effective as promptly as practical thereafter.

The closing of the private placement is subject to the satisfaction of certain customary closing conditions set forth in the securities purchase agreement.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

19.    On January 15, 2021, the Company authorized the filing of the Registration Statement with the SEC.  The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

20. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Company's Financial Projections**

21. The Registration Statement notes that the Company's and MYMD's management prepared financial projections concerning the Proposed Transaction, however the Registration Statement fails to disclose both sets of projections.

22. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Gemini's Financial Opinion**

23. The Registration Statement contains the financial analyses and opinion of Gemini Valuation Services, LLC ("Gemini") concerning the Proposed Transaction, but fails to provide material information concerning such.

24. With respect to Gemini's *Guideline Transaction Analysis*, the Registration Statement fails to disclose the closing dates of the transactions.

8

25. With respect to Gemini's *Akers Valuation Analysis*, the Registration Statement fails to disclose the transactions and companies observed in the analysis, as well as the basis for Gemini's selection of such.

26. With respect to Gemini's *Relative Valuation Analysis*, the Registration Statement fails to disclose the pro forma net cash used in the analysis.

27. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

28. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

29. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

30. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

31.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

32.     Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

33.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

34.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not

misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

35. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

36. The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

37. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

38. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. The Individual Defendants acted as controlling persons of Akers within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Akers, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

43. In addition, as set forth in the Registration Statement sets forth at length and

described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.  Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 8, 2021

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*